IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RUBY LANEY, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-1957 |
| § | |
| AVIS RENT-A-CAR SYSTEM, INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 21). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

**I. Case Background**

Plaintiff Ruby Laney ("Plaintiff") filed the present action against Defendant Avis Rent-A-Car System, Inc. ("Avis"), alleging wrongful termination, breach of contract, and statutory violations of Title VII of the Civil Rights Act of 1964[2] ("Title VII") and the Family Medical Leave Act of 1993[3] ("FMLA").

**A. Procedural History**

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 11.

[2] 42 U.S.C. §§ 2000e-2000e-17.

[3] 29 U.S.C. §§ 2601-2654.

Plaintiff filed a charge of race and sex discrimination with the Equal Employment Opportunity Commission ("EEOC") in August 2008, following the termination of her Independent Operator Agreement ("IOA") with Avis.[4] The EEOC determined that the "facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC."[5] It therefore dismissed the charge and issued Plaintiff a right-to-sue letter on December 5, 2008.[6] Having exhausted her administrative remedies, Plaintiff timely filed an action against Avis on March 2, 2009.[7] She did not, however, disclose that lawsuit in her subsequent Chapter 7 bankruptcy petition filed on May 19, 2009.[8] As a result, the claim was dismissed for lack of standing on February 25, 2010.[9] Plaintiff's motion for reconsideration of the dismissal was denied

---

[4] See Doc. 1, Pl.'s Compl.; see also Doc. 26, Appx. to Def.'s Mot. for Summ. J., Ex. O, EEOC Intake Questionnaire.

[5] Doc. 27, Ex. S to Def.'s Mot. for Summ. J., EEOC Dismissal and Notice of Rights.

[6] See id.

[7] See Laney v. Avis Rent A Car System, Inc., No. 4:09-CV-00622, Doc. 1, Pl.'s Compl.

[8] See id. at Ex. R to Def.'s Mot. for Summ. J., Pl.'s Bankr. Doc. Sheet); Ex. S to Def.'s Mot. for Summ. J., 4th Am. Schedule C; Ex. T to Def.'s Mot. for Summ. J., 1st Am. Stmt. of Fin. Affairs.

[9] See id. at Doc. 20, Mem. & Or. re: Def.'s Mot. for Summ. J.

on April 6, 2010.[10]

Two months later, on June 3, 2010, Plaintiff filed this action against Avis.[11] Avis filed the pending motion for summary judgment on April 15, 2011.[12] Plaintiff responded on July 21, 2011; Avis filed its reply two weeks later, on August 3, 2011.[13]

**B. Factual History**

Plaintiff is an African-American woman with post-secondary degrees from Texas Southern University and Houston Business College.[14] She has created, owned, and operated several businesses since entering the workforce.[15] Plaintiff ran her own temporary employment agency for ten years before seeking to become an agency operator in the car rental industry.[16] On or around April 6, 2005, upon finding Avis's online advertisement to "be your own boss," Plaintiff submitted an Avis Agency Operator Application for

---

[10]  See id. at Doc. 24, Or. Denying Mot. for Recon.

[11]  See Doc. 1, Pl.'s Compl.

[12]  See Doc. 21, Def.'s Mot. for Summ. J.

[13]  See Doc. 32, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 33, Def.'s Reply in Supp. of Mot. for Summ. J.

[14]  See Doc. 22, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 10.

[15]  See id. at 10-13, 17-18, 83.

[16]  See id. at 18-19.

3

consideration.[17] She received training and monthly income from Avis prior to becoming an agency operator.[18]

On December 29, 2005, Plaintiff formed Pearland Rent-A-Car, LLC, ("Pearland") and served as President of the newly formed company, as well as a shareholder along with her two daughters.[19] Three months later, on or around April 27, 2006, Avis and Pearland entered into an IOA and Plaintiff became the agency operator of that location.[20]

In order to promote the business, Plaintiff distributed her own flyers, in addition to those provided by Avis, and actively solicited both business and individual clients.[21] Further, she added vending machines at the store, the income from which she did not share with Avis.[22] As the store's client base grew, Plaintiff invited her daughter to help manage the business and enlisted her

---

[17] Id. at 19; see Doc. 25, Ex. K to Def.'s Mot. for Summ. J., Avis Agency Operator Application.

[18] See Doc. 25, Ex. K to Def.'s Mot. for Summ. J., Avis Agency Operator Application. This signed form appears to be an addendum to an agreement that is not in the record.

[19] See Doc. 27, Ex. R to Def.'s Mot. for Summ. J., Certificate of Organization; Doc. 22, Ex. D to Def.'s Mot. for Summ. J., p. 25.

[20] See Doc. 26, Ex. L to Def.'s Mot. for Summ. J., Independent Operator Agreement.

[21] See Doc. 23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 49-53.

[22] See Doc. 22, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 48.

4

nephew to wash the rental cars for free.[23] Between July 2006 and October 2007, Plaintiff also employed two part-time workers, Sandra Williams ("Williams") and Cedric Howard, and used a temporary employment agency as she felt necessary to assist her with running the store.[24] Avis was not consulted and did not provide input regarding Plaintiff's choice of employees or the conditions of their employment.[25]

On October 5, 2007, after running Pearland for over a year, Plaintiff suffered two aneurysms, resulting in a two-week hospital stay.[26] During her hospital stay, Plaintiff was contacted by Avis District Manager Jim Bell, who informed her about a letter he would be sending because of her inability to run the store.[27] Cheryl Zellers ("Zellers"), an Avis agency manager, followed up with a similar phone call; Plaintiff directed Zellers to fax the letter to her home.[28] The letter, dated October 16, 2007, terminated the IOA

---

[23] See id. at 40-41.

[24] See id. at 40-43.

[25] See Doc. 22-23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo. p. 44, 58.

[26] See Doc. 23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 61.

[27] See Doc. 24, Ex D to Def.'s Mot. for Summ. J., Pl.'s Depo., p. 86.

[28] See id. at 86-87.

5

due to Pearland's "inability to properly operate the location."[29] Plaintiff initially declined to sign Avis's letter, instead drafting her own letter dated November 7, 2007, which stated that she would be taking a leave of absence effective October 16, 2007, until January 15, 2008.[30] After Avis's refusal to sign her letter, Plaintiff signed a new copy of the October 16 agreement and faxed it back to Avis on November 8, 2008.[31]

A short time after returning home from the hospital, Plaintiff was contacted by Avis about the possibility of reinstating the IOA with Pearland.[32] Plaintiff agreed to resume operation of Pearland beginning January 14, 2008.[33] In the interim, Zellers managed Pearland and found several Avis policy violations: some rental vehicles had unaccounted-for mileage; customers were renting vehicles at discounted replacement rates despite being unqualified for those rates; and Williams had improperly switched credit cards

---

[29] Doc. 26, Ex. N to Def.'s Mot. for Summ. J., Letter from Avis to Pl.

[30] See id. at Ex. M to Def.'s Mot. for Summ. J., Letter from Pl. to Avis.

[31] See Doc. 24, Appx. to Def.'s Mot. for Summ. J., Ex. D, Pl.'s Depo., p. 117.

[32] See Doc. 23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 69-70.

[33] See id. at 70.

in renting vehicles to her sister and her husband.[34]

Zellers discovered additional policy violations in April and May 2008, after Plaintiff's return to the location.[35] Specifically, in reviewing Pearland's weekly inventories, together with her own inventory and reports received from Avis, Zellers found that several vehicles were missing from the lot.[36] When the missing vehicles were later found, mileage records revealed several hundred miles per car that were unaccounted for in the rental contracts on file.[37] Citing these policy violations and Pearland's "failure to safeguard Avis's assets," Avis terminated the IOA on June 2, 2008.[38]

## II. **Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

---

[34] See Doc. 22, Ex. B to Def.'s Mot. for Summ. J., Decl. Cheryl Zellers, pp. 1-2.

[35] See id. at 2-3.

[36] See id. at 3.

[37] See id. at 3-6; Doc. 25, Ex. F to Def.'s Mot. for Summ. J., Rental & Mileage for Dodge Grand Caravan; Ex. G to Def.'s Mot. for Summ. J., Rental & Mileage for Ford Explorer; Ex. H to Def.'s Mot. for Summ. J., Rental & Mileage for Chevy Impala; Ex. I to Def.'s Mot for Summ. J., Rental and Mileage for Pontiac Grand Prix.

[38] See Doc. 25, Ex. J to Def.'s Mot. for Summ. J., Notice of Termination of Independent Operator Agreement.

Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Avis moves for summary judgment on Plaintiff's claims of discrimination under Title VII, retaliation under the FMLA, breach of contract, and wrongful termination. The court considers each in

9

turn.

**A. Title VII**

In support of its motion regarding Plaintiff's Title VII claims, Avis argues that: (1) Plaintiff was an independent contractor and thus not covered by Title VII; (2) the claims raised in this second suit are time-barred; (3) Plaintiff cannot establish a prima facie case of discrimination; and (4) Avis had a legitimate, non-discriminatory reason for terminating the IOA. The court begins and ends with consideration of Avis's first argument in favor of dismissal of Plaintiff's Title VII claims.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). As a threshold matter, a plaintiff must be in an employee-employer relationship with the defendant in order to claim relief under Title VII. See Diggs v. Harris Hosp.-Methodist, Inc., 847 F.2d 270, 272 (5th Cir. 1988) ("a Title VII claim must necessarily involve an employment relationship."); Heckler v. Prod. Dev. Corp., 2003 WL 22961214, *2 (N.D. Tex. 2003) ("absent an employer-employee relationship, the alleged aggrieved plaintiff has no standing to bring a Title VII action."). Whether an individual is a qualified employee for purposes of Title VII and thus entitled to its protections is a question of law "to be ascertained through

consideration of the statutory language of [Title VII], its legislative history, existing federal case law, and the particular circumstances of the case at hand." Broussard v. L.H. Bossier, Inc., 789 F.2d 1158, 1160 (5th Cir. 1986).

The Fifth Circuit resolves the issue of an individual's employment status for purposes of Title VII by applying a hybrid traditional common law test of agency and economic realities test. See Arbaugh v. Y&H Corp., 380 F.3d 219, 226 (5th Cir. 2006), rev'd on other grounds, 546 U.S. 500 (2006); Mares v. Marsh, 777 F.2d 1066, 1067 (5th Cir. 1985). Central, though not determinative, to this analysis is the employer's right to control the employee's conduct. Hathcock v. Acme Truck Lines, Inc., 262 F.3d 522, 26 (5th Cir. 2001); Fields v. Hallsville Ind. Sch. Dist., 906 F.2d 1017, 1019 (5th Cir. 1990). In evaluating the right of control, courts have focused on "whether the alleged employer had the right to hire and fire, the right to supervise, the right to set the work schedule, paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." Hathcock, 262 F.3d at 526; see also Deal v. State Farm County Mut. Ins. Co. of Tex., 5 F.3d 117, 119 (5th Cir. 1993).

Beyond the degree of control exercised by the alleged employer, several additional, nondispostive factors bear on the economic reality of the alleged employment relationship:

> (1) the kind of occupation, with reference to whether the work usually is done under the

11

> direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer;" (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

Diggs, 847 F.2d at 272-73; see also Arbaugh, 380 F.3d at 226 (listing eight factors pertinent to the hybrid test). Here, an assessment of the factors of the hybrid economic realities/common law test compels a finding that Plaintiff was an independent contractor and thus outside the purview of Title VII.

Regarding Avis's right of control over Plaintiff's conduct at Pearland, Avis points to the terms of the IOA that designate Pearland as the party responsible for hiring its own employees and determining their compensation, schedules, and duties.[39] Although Avis and Pearland mutually agreed on the minimum number of days and hours that Pearland had to be open under the IOA, Avis did not dictate employment requirements for or offer employee benefits to Plaintiff or any other Pearland employee.[40] Avis supports the terms

---

[39] See Doc. 26, Ex. L to Def.'s Mot. for Summ. J., Ind. Operator Agreement, pp. 1-2.

[40] See id. at 1-2, 4.

12

set forth in the IOA with Plaintiff's deposition testimony, in which she confirmed that Pearland, acting through herself, its president, was solely responsible for hiring, paying, and firing employees at the location, as well as setting their work schedules and providing them with insurance benefits.[41] Pearland was responsible for paying its operational expenses, including employees' compensation, from the commissions received from Avis based on Pearland's sales.[42] Plaintiff confirmed that Pearland filed tax returns with its own federal taxpayer identification number.[43]

To further focus on the economic reality of the relationship between Avis and Plaintiff, Avis claims that Plaintiff's entrepreneurship, initiative, and independent marketing savvy enabled Plaintiff to directly impact Pearland's profits, thus indicating the existence of an independent contractor relationship. In particular, Avis cites to Plaintiff's submitted business plan for Pearland, as well as Plaintiff's deposition testimony regarding her active customer solicitation.[44] Also supporting a finding that

---

[41] See Doc. 23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 40-44, 57-58, 103-04.

[42] See id. at 104.

[43] See id. at 103.

[44] See Doc. 27, Ex. P to Def.'s Mot. for Summ. J., Pl.'s Busi. Plan; Doc. 22, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 49-53.

13

Plaintiff was an independent contractor, argues Avis, is Avis's inability under the IOA to terminate the agreement between it and Pearland without cause absent 90-days written notice.[45] With respect to the parties' intent, the IOA identifies Pearland as an independent contractor;[46] indeed, Plaintiff self-identified as an employee of Pearland, not Avis, both at her deposition and in her EEOC intake questionnaire.[47]

In response, Plaintiff cites state-law tests determining whether an individual is an employee or independent contractor. Because Title VII is governed by federal law, the tests cited by Plaintiff have no bearing on this analysis. Plaintiff further alleges that Avis interfered with her management of the Pearland location by not giving her free rein to advertise and set rental prices for Avis's vehicles and by establishing revenue goals for the location.[48] However, Plaintiff's allegations are

---

[45] See Doc. 26, Ex. L to Def.'s Mot. for Summ. J., Ind. Operator Agreement, p. 10.

[46] See id. at 1.

[47] See Doc. 23, Ex. D to Def.'s Mot. for Summ. J., Pl.'s Depo., pp. 146-47; Doc. 26, Ex. O to Def.'s Mot. for Summ. J., EEOC Intake Questionnaire, p. Laney000146.

[48] See Doc. 32, Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. Ruby Laney, p. 26. Plaintiff also claims that Avis directed her to terminate the employment of Williams. Because this statement directly contradicts Plaintiff's earlier repeated, sworn deposition testimony without explanation, the court declines to consider it as competent summary judgment evidence. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

unsubstantiated by evidence in the record and are therefore insufficient to refute Avis's summary judgment evidence that Plaintiff was an independent contractor and thus not entitled to Title VII protections.

Because the court finds as a matter of undisputed fact that Plaintiff was an independent contractor and not an employee of Avis, summary judgment in favor of Avis should be granted on the Title VII claims.

**B. FMLA**

Avis moves for summary judgment on Plaintiff's FMLA retaliation claim on the grounds that: (1) Plaintiff is not an employee under the FMLA; (2) the claim is time-barred; and (3) even if Plaintiff were an employee, she cannot establish a prima facie case of retaliation. Having found in favor of Avis on the dispositive issue of Plaintiff's employment status, the court need not reach Avis's latter two arguments in favor of dismissal of Plaintiff's retaliation claim.

In relevant part, the FMLA prohibits an employer from discriminating or retaliating against an employee who opposes an act made unlawful by the FMLA or who exercises her substantive FMLA rights, such as the requirement that an employer grant an eligible employee twelve weeks of leave for "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D); 29 U.S.C. § 2615(a);

15

Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). As with Title VII, a plaintiff seeking relief under the FMLA must first establish the existence of an employer-employee relationship with the defendant. See Foster v. Hall, 54 F. App'x 794, 794 (5th Cir. 2002) ("an employer-employee relationship . . . is required under both Title VII and the FMLA.").

The court has not located, and the parties have not cited, Fifth Circuit precedent for determining whether an individual is an employee or independent contractor for purposes of the FMLA. Given that the FMLA incorporates by reference the broad definition of employee as defined by the Fair Labor Standards Act[49] ("FLSA"), the court finds it appropriate to consider Plaintiff's employment status under the economic realities test applied in claims involving the FLSA. See 29 U.S.C. § 203(e)(1); 29 U.S.C. § 2611(3). In determining whether an individual is an employee under this economic realities test, the court considers five non-dispositive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

Hopkins v. Cornerstone America, 545 F.3d 338, 343 (5th Cir. 2008)

---

[49] 29 U.S.C. §§ 201 et seq.

(citing Herman v. Express Sixty-Minutes Delivery Service, Inc., 161 F.3d 299, 303-05 (5th Cir. 1998)).

The IOA between Avis and Pearland, through Plaintiff in her capacity as Pearland's president, was for an indefinite duration and could be terminated by either party upon proper notice or immediately by Avis upon the occurrence of certain policy violations by Pearland or its employees.[50] As discussed above, Avis has proffered undisputed summary judgment evidence that Pearland received business income in the form of commissions from Avis; was solely responsible for hiring, compensating, scheduling, firing, and insuring employees; paid all operating costs; and filed tax returns with its own taxpayer identification number. Additionally, Plaintiff testified at her deposition, and Avis does not dispute, that Plaintiff's active marketing and advertising contributed to the business generated by Pearland. These factors militate in favor of the existence of an independent contractor relationship between Plaintiff and Avis, as opposed to an employer-employee relationship.

Plaintiff responds to the motion with allegations that Avis's responses to interrogatories were either false or evasive and that Avis's actual conduct effectively rendered Plaintiff its employee. However, Plaintiff has not produced any competent summary judgment

---

[50] See Doc. 26, Ex. L to Def.'s Mot. for Summ. J., Ind. Operator Agreement, pp. 8-11.

evidence to support her allegations. The court therefore finds as a matter of undisputed fact that Plaintiff was not an employee for purposes of the FMLA. Summary judgment should be granted in favor of Avis on this claim.

**C. Breach of Contract and Wrongful Termination**

Avis moves for summary judgment on Plaintiff's claim that Avis committed a material breach when it wrongfully terminated the IOA, and thereby Plaintiff's employment, in spite of Plaintiff's conduct in conformity with the agreement.[51] Specifically, Avis argues that termination was warranted under Section 7(b)(1)(ii) of the IOA, which entitles Avis to terminate the agreement when "[o]perator or any of its employees engages in the unauthorized sale, rental, or use of the vehicles of Avis System Members. . . ."[52]

In support of its argument, Avis directs the court's attention to Zellers' declaration.[53] While conducting a routine inventory of Pearland's lot in April 2008, about three months following Plaintiff's return as independent operator, Zellers discovered that several cars were missing.[54] Each car was later found to have

---

[51] See Doc. 1, Pl.'s Compl., p. 5.

[52] Doc. 26, Ex. L to Def.'s Mot. for Summ. J., Ind. Operator Agreement; see also Doc. 25, Ex. J to Def.'s Mot. for Summ. J., Notice of Termination of Ind. Operator Agreement.

[53] See Doc. 24, Ex. B to Def.'s Mot. for Summ. J., Decl. Cheryl Zellers.

[54] See id. at 3.

several hundred miles that were unaccounted for by Pearland's rental contracts.[55] Avis has produced those mileage records and Vehicle Trace Reports showing that the cars were returned with several hundred additional miles and no indication of being out on a rental contract in its summary judgment evidence.[56]

Plaintiff responds with the conclusory statement that "the majority of these alleged incidents happened during the months where Avis personnel was managing the facility."[57] She has failed, however, to produce any competent summary judgment evidence to substantiate her claim or to contest the evidence produced by Avis. Summary judgment in favor of Avis should therefore be granted on these claims.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the period

---

[55] See id. at 3-6.

[56] See Doc. 25, Exs. F, G, H, I to Def.'s Mot. for Summ. J., Vehicle Mileage and Trace Records.

[57] Doc. 32, Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 23.

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 27th day of September, 2011.

Nancy K. Johnson
United States Magistrate Judge